**UNITED STATES of America,
Plaintiff,**

v.

**Donald E. BABCOCK, Defendant.**

**No. 2–72–Crim–15.**

United States District Court,
D. Minnesota,
Second Division.

April 5, 1972.

Robert G. Renner, U. S. Atty., and
Neal J. Shapiro, Asst. U. S. Atty., Min-
neapolis, Minn., for plaintiff.

Sanborn, Rice, Holcomb & Grayson,
George R. Roedler, Jr., St. Paul, Minn.,
for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

This selective service case, tried to the
court on March 30, 1972, resulted from
an indictment which charged defendant
with failing to comply with an order of
his local Selective Service Board to re-
port for civilian work.

The sole issue in this case is whether
the facts defendant presented to his lo-
cal board made out a prima facie show-
ing of qualification for a IV–D classifi-
cation. It is defendant's position that
he did present sufficient facts to consti-
tute such a showing. Defendant urges
that in the face of this showing and the
board's failure to record the reasons
why it denied the requested classifica-
tion, the subsequent order to report for
civilian work was invalid and thus a
judgment of acquittal should be entered
here.

Defendant's Selective Service
File reflects the following: After de-
fendant registered with the Selective
Service System he was classified 1–0 on
November 3, 1965. At the time of this
initial classification the strongest show-
ing of qualification for the IV–D classi-
fication reflected in his file was a state-

ment by registrant that he had become a minister in 1963 and a letter to the board from the Presiding Minister of registrant's congregation stating that the registrant spent twenty-five to thirty hours per month on his ministry. Such information, standing alone, would not have supported a IV–D classification. In addition, such information would not constitute a prima facie showing of qualification for such classification.

Information submitted to the local board by registrant between this initial classification and a subsequent reclassification on December 10, 1969 indicated that there were approximately twenty members in the congregation, that all members considered themselves to be ministers, that registrant was primarily employed as a cement finisher working forty to sixty hours a week and that he had not yet performed any "ordinances of public worship." The file reflects that on several occasions the board furnished registrant a special information form tailored to the elicitation of information relating to his activities as a Jehovah's Witness.

On July 7, 1969 registrant advised his board that he was employed as a construction worker. On December 1, 1969 registrant informed the board that he would not accept his 1–0 classification and that he had been appointed "Theocratic Ministry School Servant" for his congregation. No significant additional information was submitted and on December 10, 1969 the board classified registrant 1–0. After a personal appearance by registrant, the board again classified him 1–0 on January 14, 1970 and on April 25, 1970 this classification was upheld by the State Appeal Board. On November 27, 1970 the registrant was order to report for civilian work. Upon his refusal to submit to such work the indictment and trial followed.[1]

 It has been held that a registrant seeking to present a prima facie showing of qualification for a IV–D classification must show that the ministry is his vocation rather than merely an avocation. It is also necessary that he show he regularly conducts religious activities and that he have recognized standing as a minister to a congregation.[2] McCoy v. United States, 403 F.2d 896 (5th Cir. 1968), Wiggins v. United States, 261 F.2d 113 (5th Cir. 1958), cert. denied, 359 U.S. 942, 79 S. Ct. 723, 3 L.Ed.2d 676 (1959). The IV–D classification is intended only for the leaders of religious faiths and not for all the members generally. Dickinson v. United States, 346 U.S. 389, 74 S. Ct. 152, 98 L.Ed. 132 (1953). The burden of establishing a prima facie showing of qualification for the IV–D classification is upon the registrant. Camp v. United States, 413 F.2d 419 (5th Cir. 1969), cert. denied, 396 U.S. 968, 90 S.

---

1. At trial defendant testified that he did receive the order to report for civilian service in sufficient time to comply with it and knowingly and willfully failed to comply with the order.

2. 50 U.S.C.App. § 456(g) (1) provides, "Regular or duly ordained ministers of religion, as defined in this title . . . shall be exempt from training and service. . . . ." In order to qualify as a regular or duly ordained minister of religion under 50 U.S.C.App. § 466(g) (1) a registrant must be a person, " . . . who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church . . . and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization." Section 466(g) (3) provides that, "The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

Ct. 451, 24 L.Ed.2d 434 (1969). Although the courts have had difficulty in dealing with the IV–D classification as it might be applied to Jehovah's Witnesses, it seems the determination of qualification turns on the result of a balancing of the secular against the religious interests and activities of the registrant. *Wiggins, supra.* The cases, particularly *Camp* and *McCoy,* indicate that it has been the position of the Jehovah's Witnesses that the society would not seek ministerial classification except for those who qualify as "Pioneers" and as "Congregation Servants" and for those who devote sufficient time to their ministry to claim that it is their vocation rather than their avocation. Under the facts as these were presented to the local board concerning the amount of time registrant spent on his work as a cement finisher in relation to the amount of time he spent on his ministry and in light of registrant's statement to the local board that he did not in fact perform the ceremonies of his religion, it seems clear that registrant did not make a prima facie showing of entitlement to the IV–D classification.[3] The material submitted to the board in support of registrant's request for the classification indicates that the ministry was registrant's avocation rather than his vocation.

But it is the position of defendant that even in the face of his failure to make sufficient showing the board was required to inform him of the reasons why it denied his request for the IV–D classification. Defendant argues that the holding of United States v. Philbrook, 337 F.Supp. 70 (D.Minn.1972), which requires the local board to indicate on the record the basis upon which it has acted in denying a registrant's request for classification, applies regardless of whether or not a registrant makes the prima facie showing of qualification.

The government on the other hand would limit the holding in *Philbrook* to the situation where the registrant makes a prima facie showing of qualification for classification as a conscientious objector and the record indicates that the basis for denial of the requested classification might have been that the board did not believe the registrant to be sincere in his beliefs. I feel that neither of these positions reflects the proper extent of the holding in *Philbrook.* Although I do not believe it wise to limit *Philbrook* either to the situation where the primary issue involves registrant's sincerity or even to where a claim for classification as a conscientious objector is involved, I do believe that it is not necessary for the board to indicate the basis upon which it acts where the registrant fails to make a prima facie showing of qualification for classification.[4] Since defendant did not make a prima facie showing of qualification for the IV–D classification it was not necessary for the board to indicate why it acted in denying the classification.

I find that defendant is a person subject to the Military Selective Service Act; that he did receive a valid order to report for civilian service and did knowingly and willfully fail to comply with this order. In addition I find that defendant failed to make a prima facie showing of qualification for the IV–D classification and that in the face of

---

3. Defendant's testimony at trial, which significantly expanded upon the showing he made to the local board, is of course not material to the issue before the court as the information contained in this testimony was not before the board at the time the classification was denied.

4. In regard to board action taking place after September 2, 1971, it is required that the board furnish a brief written statement of the reasons for its decision regardless of whether or not the registrant makes a prima facie showing of qualification. Pub.L. 92–109, § 101(a) (36), 85 Stat. 348, 353. This statute is reviewed in Fein v. Selective Service System Local Board No. 7, 405 U.S. ——, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). *See also,* 36 Fed. Reg. 2337–23385 and 37 Fed.Reg. 5120–5127, United States v. Pryor, 448 F.2d 1273 (9th Cir. 1971); United States v. Campbell, 439 F.2d 1087 (9th Cir. 1971).

such failure the local board was not required to indicate the reasons for its denial of the classification. Defendant is guilty as charged in the indictment.